UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                          )
                                                )
    CRYPTEK, INC.                               )    Case No. 08-17324-SSM
                                                )    Chapter 7
                Debtor                          )

**MEMORANDUM OPINION**

Before the court is the motion of the chapter 7 trustee, Gordon P. Peyton—joined by administrative expense claimants Kasimer & Annino, P.C. and Sonex, Inc.—to require the law firm of Shulman, Rogers, Gandel, Pordy, & Ecker, P.A. ("Shulman Rogers"), which represented the debtor in possession prior to the conversion of this case from chapter 11 to chapter 7, to disgorge approximately $35,000 of the nearly $163,000 in approved fees and expenses that were paid to the firm (in part by the trustee but mostly by drawing down on a retainer) following the conversion of the case.  The trustee asserts that disgorgement is appropriate because the estate is administratively insolvent, and disgorgement is necessary to achieve equality of distribution among the chapter 11 administrative claimants.  A hearing was held on November 16, 2010, at which the court directed disgorgement of the $1,787.90 that was paid directly by the trustee but took under advisement the issues with respect to the amounts paid from the retainer held by the firm.  At a continued hearing on December 14, 2010, the court directed that $33,487.38 of the amount drawn down from the retainer be disgorged.  The purpose of this opinion to explain more fully, for the benefit of the parties and any reviewing court, the reasons for the court's ruling.

1

Background

Cryptek, Inc., doing business as Cryptek Secure Communications, LLC ("the debtor"), filed a voluntary petition in this court on November 21, 2008, for reorganization under chapter 11 of the Bankruptcy Code. It was represented in connection with the filing of the case by Shulman Rogers. The disclosure of compensation and the application for employment filed by the firm reported that it had received a retainer of $135,000.00, of which $24,126.00 had been drawn down prior to the filing of the petition, leaving a balance of $110,874.00. An amended disclosure filed on February 9, 2009, reported that the debtor had paid an additional $50,000.00 on February 6, 2009, bringing the total retainer to $160,874.00. No order had been sought or obtained authorizing the post-petition retainer. In any event, an order approving the firm's employment as counsel for the debtor in possession was entered on March 6, 2009.

On January 7, 2009, the debtor filed a motion to sell substantially all of its assets. The motion was granted on February 23, 2009. Two weeks later, the debtor filed a motion to convert its case to chapter 7, and an order was entered on March 13, 2009, converting the case. Richard A. Bartl was initially appointed as trustee but subsequently resigned, and Gordon P. Peyton has been appointed as successor trustee.

On April 1, 2009, Shulman Rogers filed its first (and only) application for interim compensation seeking $157,656.50 in fees and $7,345.40 in expenses. An order was entered on May 7, 2009, granting the application in the slightly reduced amount of $155,916.50 in fees and $6,717.40 in expenses, for a total of $162,633.90, and authorizing the firm to apply the $160,874.00 retainer against the approved amount, with the balance "to be paid by the Debtor

2

[*sic*] immediately as an allowed administrative expense." Based on the order, the trustee paid Shulman Rogers $1,759.90.

Counsel for the Official Committee of Unsecured Creditors, Kasimer & Annino, P.C., was not so lucky. Although its application for interim compensation was filed and heard prior to the Shulman Rogers application being filed, the approved fees and expenses of $13,286.89 were not paid by the trustee. The firm then filed a motion to compel the trustee to pay the approved fees and expenses. The trustee opposed the motion because of a concern that the estate might prove administratively insolvent. The court denied the motion for immediate payment and explained:

> Although the court agrees that the amount [previously] approved is an administrative expense that requires no further application or approval simply because the case has been converted, and although the court agrees that the order is binding on the chapter 7 trustee, nothing in the Bankruptcy Code or Rules requires immediate payment of allowed administrative expense claims. Indeed, the normal practice in chapter 7 cases is to pay administrative expenses at the time the trustee's final report and account before distribution is approved. It is true that the trustee does have discretion to pay approved administrative expense claims prior to the final distribution if satisfied that there will be sufficient funds on hand to pay all administrative claims in full. If administrative solvency is not assured, however, the court would not normally authorize, let alone compel, the trustee to pay administrative expense claims prior to the submission of a final report and account before distribution. This is particularly true with respect to chapter 11 administrative expense claims in a case converted to chapter 7, since such expenses are subordinate to the administrative expenses of the chapter 7 case. § 726(b), Bankruptcy Code. Although the court recognizes the hardship on the law firm of having to wait for payment, such waiting is simply a fact of life in bankruptcy cases. The court also acknowledges the seeming unfairness of counsel for the debtor in possession having already received full payment, but the fact remains that any such payment is subject to partial disgorgement — so as to provide for ratable payment — if the estate proves administratively insolvent.

Order of 9/8/09 (Doc. # 218).

The present motion, filed by the chapter 7 trustee on October 28, 2010, seeks the very disgorgement envisioned by the order denying Kasimer & Annino's motion for immediate payment of their approved fees and expenses. The motion has been joined, not surprisingly, by Kasimer & Annino and also by Sonex, Inc., which has an approved administrative expense claim in the amount of $97,893.00 for goods delivered to the debtor within 20 days prior to the filing of the chapter 11 petition. The motion represents—and Shulman Rogers does not deny—that the funds currently in the estate would pay only 69% of the approved but unpaid chapter 11 administrative claims.[1] The motion calculates that if the entire $162,633.90 paid to Shulman Rogers was disgorged, and it then received a pro rata distribution in accordance with § 726(b), Bankruptcy Code, it would be paid $127,358.62, or approximately 78%, of its approved fees and expenses. The motion seeks disgorgement of the difference between these two amounts, or $35,275.28, so that all chapter 11 administrative expense claims will receive the same percentage payment.

Discussion

A.

In the chapter 7 scheme of distribution, allowed priority claims are paid ahead of other claims. § 726(a)(1), Bankruptcy Code. Priority claims include allowed administrative expenses, which are a second-level priority, subordinate only to claims for domestic support obligations. § 507(a)(2), Bankruptcy Code. Administrative expenses in turn includes compensation awarded

---

[1] The pro forma distribution proffered by the trustee reflects $158,411.67 on hand. After payment of $29,516.93 in chapter 7 administrative expenses, $128,894.74 would remain to pay $362,124.61 in approved chapter 11 administrative expenses (exclusive of Shulman Rogers's approved fees). Nothing of course would be available for payment of lower level priority claims, let alone unsecured claims.

4

to professionals. § 503(b)(2), Bankruptcy Code.  Payment of administrative expense claims "shall be made pro rata among claims of the kind specified," except that, when a case is converted to chapter 7 from chapter 11, 12, or 13, an administrative expense incurred under chapter 7 after the conversion "has priority over a claim . . . incurred under any other chapter." § 727(b), Bankruptcy Code.  In short, to the extent there is not enough money to pay administrative expenses in full, the chapter 7 administrative expenses are paid first, and, if the remaining funds are insufficient to pay the chapter 11 administrative expenses in full, they are paid pro rata.

B.

Shulman Rogers does not dispute these general principles, but says that if—notwithstanding the statutory distribution scheme—it has nevertheless succeeded in getting paid in full, there is no statutory authority to compel disgorgement of what it has already received, and that, in any event, there is no authority, statutory or otherwise, to require it to disgorge amounts for which it held a retainer.  As to the first issue, courts are divided, with what a leading treatise characterizes as the majority view holding that a bankruptcy court is required to order disgorgement of professional fees when disgorgement is necessary to achieve pro rata distribution to administrative claimants.  3 Collier on Bankruptcy ¶ 331.05[2][a] (16th ed. 2010). The minority view, which Collier nevertheless characterizes as the "better reasoned," holds that administrative insolvency does not require disgorgement in all cases, and that courts retain discretion to order disgorgement of interim compensation in order to equalize distribution to other professionals.  *Id.* ¶ 331.05[2][b].

5

The majority view is represented by the only published case in this district addressing the issue. *Shaia v. Durrett, Irvin, Lemons & Bradshaw (In re Metropolitan Elec. Supply Corp.)*, 185 B.R. 505 (Bankr. E.D. Va. 1995) (Shelley, J). In that case, the defendant law firm and an accounting firm had been employed by the debtor in possession with court approval. Following the conversion of the case to chapter 7, both the law firm and the accounting firm filed what were denominated "final" applications for compensation. The applications were granted by the court, with the orders directing "that the Chapter 7 Trustee is authorized to pay such fees and expenses ... from funds remaining in the Debtor's estate." *Id*. at 506. The trustee, after determining that there appeared to be sufficient funds in the estate to pay both the chapter 11 and chapter 7 administrative claims in full, paid the allowed compensation. As in the present case, however, it subsequently became clear that although there were sufficient funds in the estate to pay the chapter 7 administrative expenses in full, there were insufficient funds to pay the chapter 11 administrative expenses in full. The trustee brought an adversary proceeding seeking disgorgement of the fees paid to the law firm and the accounting firm.

In ruling for the trustee, Judge Shelley held that a professional employed in a chapter 11 case may be forced to disgorge compensation paid by a chapter 7 trustee when insufficient funds remain in the estate to pay both the chapter 7 and 11 expenses in full. In so holding, Judge Shelley cited the court's power under § 105(a), Bankruptcy Code, to "issue any order, process or judgment that is necessary or appropriate" to carry out the mandates of the Code, including enforcement of the statutory distribution scheme in § 726(a) and (b), Bankruptcy Code. As the court explained:

> When a Chapter 11 case is converted to one under Chapter 7, the Chapter 7 administrative expenses have a priority of payment over the Chapter 11

>administrative expenses. Once the Chapter 7 administrative expenses are paid in full, Chapter 11 administrative expenses are paid on a pro-rata basis if the estate cannot pay all Chapter 11 administrative expenses in full. Subordination of administrative expenses incurred prior to conversion to those incurred after conversion provides professionals who participate in the Chapter 7 liquidation a greater assurance of payment, encouraging the participation of those professionals. . . . Professionals employed in the bankruptcy arena are placed upon notice of the § 726(b) distribution scheme by holding themselves out as having a working knowledge of the Bankruptcy Code. In that light, a professional engaged to represent a Chapter 11 debtor receiving a payment for Chapter 11 administrative expenses before or after the case has been converted to Chapter 7 is on notice that § 726(b) may require disgorgement of those premature payments if sufficient funds do not eventually remain in the estate from which all Chapter 7 and 11 administrative fees may be paid in full.

185 B.R. at 509. *Accord Guinee v. Toombs ( In re Kearing )*, 170 B.R. 1, 7-8 (Bankr. D. D.C. 1994). *See also Begier v. Internal Revenue Service*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive pro rata shares of the debtor's property."). Putting aside, therefore, the issues raised by the retainer, this court agrees with the trustee that a professional who has received payment of approved compensation may be required to disgorge such payments to the extent necessary to achieve a ratable distribution among administrative claimants.

C.

Unlike the present case, however, *Metropolitan Electric* did not involve payment of approved compensation from a retainer held by the professional. In this connection, courts appear to be in nearly unanimous agreement that "prepetition security retainers are not subject to disgorgement simply to achieve equal distribution among similar creditors under section 726(b)." *Rus, Miliband & Smith, APC, v. Yoo (In re Dick Cepek, Inc.)*, 339 B.R. 730, 739 (9th Cir.BAP 2006); *In re Printing Dimensions, Inc.,* 153 B.R. 715, 719 (Bankr. D. Md. 1993)

(holding that counsel not required to share prepetition retainer pro rata with other administrative claimants where retainer is treated as security or held in trust); *In re Appalachian Star Ventures, Inc.*, 341 B.R. 222, 226 (Bankr. M.D. Tenn. 2006) ("An attorney with a lien on a retainer paid to him is not 'equally situated' with other administrative claimants that advance services or credit to the debtor on an unsecured basis [and as] such, § 726(b) is inapplicable."). Based on the reasoning of those opinions, the court agrees that payments of compensation made from a prepetition security retainer are not subject to disgorgement solely to achieve equality of distribution.[2]

D.

The wrinkle in this case, however, is that $50,000 of the retainer applied by Shulman Rogers to payment of its approved fees was not only received post-petition but was paid by the debtor in possession without prior court authorization. It is of course true that the payment was fully disclosed, both in the amended Rule 2016 disclosure filed within days of the payment, and again in the fee application. But mere disclosure is not the same as approval. The application for employment of the firm disclosed the prepetition retainer but contained no reference to any

---

[2] Disgorgement even of an amount paid by drawing down on a prepetition retainer could, however, be required under § 330(a)(5), Bankruptcy Code, which allows a court, in fixing "final" compensation for a professional, to reduce the amount by any interim compensation awarded under § 331, Bankruptcy Code, and "if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate." However, recapture under § 330(a)(5) of approved interim compensation would only be appropriate when the interim awards exceeded the court's final determination of the value of the professional's services. Nothing in the record suggests to the court that $162,633.90 (even though an interim rather than a final award) was not a correct determination of the *value* of Shulman Rogers's services. Put another way, the correct response when there is not enough money to pay professionals in full is not to reduce the approved amount of their compensation but rather payment of the appropriate pro rata portion of the amounts to which they would otherwise be justified.

agreement with the debtor for payment of a post-petition retainer, and the order approving the firm's employment did not authorize payment of a post-petition retainer. Whether an *approved* post-petition retainer would be treated differently from a prepetition retainer in the disgorgement analysis is an interesting question, but one which the court need not reach on the present record, since no prior approval was obtained.

As noted, the trustee seeks disgorgement of $35,275.28 in order that all chapter 11 administrative expense claims will be paid pro rata. Shulman Rogers has already been directed to disgorge the $1,787.90 that was paid by the trustee rather than from the retainer. The difference—$35,275.28—is fully encompassed within the unapproved post-petition retainer. Accordingly, a separate order will be or has been entered directing the firm to disgorge that amount as well.[3]

Date: _____          _____
                                      Stephen S. Mitchell
Alexandria, Virginia                  United States Bankruptcy Judge

---

[3] It goes without saying that disgorgement is being directed solely in order to achieve equality of distribution and is not intended as an adverse reflection on the quality of the legal services it provided to the client.

Copies to:

Robert M. Gants, Esquire
Redmon, Peyton & Braswell, LLP
510 King Street, Suite 301
Alexandria, VA  22314
Counsel for Gordon P. Peyton, chapter 7 trustee

Michael C. Crowley, Esquire
Kasimer & Annino, P.C.
7653 Leesburg Pike
Falls Church, VA  22043

Matthew Marc Moore, Esquire
Shulman, Rogers, Gandal, Pordy & Ecker
12505 Park Potomac Avenue, Sixth Floor
Potomac, MD 20854

Frank Bove, Esquire
Office of the United States Trustee
115 South Union Street, Suite 210
Alexandria, VA  22314